ESTADO LIBRE ASOCIADO DE PUERTO RICO
TRIBUNAL GENERAL DE JUSTICIA
TRIBUNAL DE APELACIONES
PANEL ESPECIAL

| | | |
|---|---|---|
| EL PUEBLO DE PUERTO RICO<br><br>Parte Apelada<br><br>v.<br><br>MAYRA ELENA PÉREZ OYOLA<br><br>Apelante | KLAN202400426 | *Apelación* procedente del Tribunal de Primera Instancia, Sala Superior de San Juan<br><br>Caso Crim. Núm. K VI2022M0001<br><br>Por:<br><br>Art. 96 (A) C.P. (1er. Grado) |

Panel integrado por su presidenta, la Jueza Ortiz Flores, el Juez Rivera Torres, la Jueza Rivera Pérez y el Juez Campos Pérez

**Rivera Pérez, Jueza Ponente**

### SENTENCIA

En San Juan, Puerto Rico, hoy 26 de diciembre de 2024.

Comparece ante nosotros la Sra. Mayra E. Pérez Oyola (en adelante, Sra. Pérez Oyola) mediante un recurso de *Apelación* y nos solicita la revisión de la *Sentencia de Cárcel Suspendida y Libertad a Prueba* dictada en su contra el 4 de abril de 2024 y notificada el 15 de abril de 2024 por el Tribunal de Primera Instancias, Sala Superior de San Juan, ("TPI"). Mediante dicha sentencia, un Jurado encontró a la Sra. Pérez Oyola culpable del delito de homicidio negligente.

Por los fundamentos que expondremos, se confirma la sentencia apelada.

### I

Por hechos ocurridos el 5 de agosto de 2018 en el Hogar la Nueva Familia San Judas Tadeo en el Municipio de San Juan (en adelante, Hogar), el Ministerio Público presentó las correspondientes denuncias y acusaciones en contra de la Sra. Pérez Oyola por violación al Artículo 96 del Código Penal, 33 LPRA sec. 5145, que

Número Identificador:
SEN2024_____

tipifica el delito de homicidio negligente. En síntesis, a la Sra. Pérez Oyola, Directora del Hogar, se le imputó haberle retirado abruptamente los medicamentos recetados a la joven Jaydie N. Álvarez (en adelante, joven Jaydie Álvarez) para su condición de salud mental, lo que resultó en su muerte.[1]

Habiéndose determinado causa probable en las etapas anteriores a juicio, se celebró el juicio penal en su fondo entre los meses de julio y diciembre de 2023 ante un panel de jurados. Desfilada y evaluada la prueba, el Jurado rindió un veredicto unánime de culpabilidad por el delito imputado a la Sra. Pérez Oyola. Así las cosas, el 4 de abril de 2024, notificada el 15 de abril de 2024, el TPI dictó la *Sentencia de Cárcel Suspendida y Libertad a Prueba* apelada contra los ahora convicta Sra. Pérez Oyola, condenándola a satisfacer una pena de tres (3) años de reclusión con el beneficio de una sentencia suspendida.

En desacuerdo, la Sra. Pérez Oyola acudió ante nosotros el 2 de mayo de 2024 mediante el presente recurso de *Apelación* solicitando que se deje sin efecto la sentencia dictada en su contra y que se decrete su absolución o que se ordene la celebración de un nuevo juicio. En su recurso, la Sra. Pérez Oyola señala los errores siguientes:

> **Primer Error:** Erró el Honorable Tribunal de Primera Instancia al abiertamente estar demostrando su parcialidad, prejuicio y animosidad hacia la apelante y en particular hacia su abogado frente al Jurado violentando su derecho a un juicio justo e imparcial.
>
> **Segundo Error:** Erró el Honorable Tribunal de Primera Instancia al permitir a testigos del Departamento de la

---

[1] Específicamente, se le acusó de lo siguiente: "[…] [A]llá en o para el período que comprende del 30 de julio de 2018 al 5 de agosto de 2018, en San Juan, Puerto Rico, que forma parte de la jurisdicción del Tribunal de Primera Instancia, Sala de San Juan, ilegal y negligentemente ocasionó la muerte a la menor, y paciente de salud mental, Jaydie Nichole Álvarez, consistente en que siendo Administradora y Operadora del Hogar San Judas Tadeo, responsable del bienestar de ésta, le retiró abruptamente los medicamentos recetados para su condición de salud mental, sin haber mediado autorización médica teniendo como consecuencia la muerte súbita de la menor el 5 de agosto de 2018." Véase, Anejo II del *Alegato en Apelación*.

Familia declarar sobre las expresiones de la Apelante al día siguiente de la escena de muerte cuando la Apelante era ya la sospechosa de la muerte.

**Tercer Error:** Erró el Honorable Tribunal de Primera Instancia al no permitir a la Defensa impugnar un informe de autopsia alterado que fue cambiado años después de rendido a petición de los fiscales del caso sin permitir contrainterrogatorio a la patóloga.

**Cuarto Error:** Erró el Honorable Tribunal de Primera Instancia al no permitir el contrainterrogatorio de un perito psiquiatra contratista del estado que la Jueza rehabilitaba frente al Jurado, no permitiendo se contrainterrogara.

**Quinto Error:** Erró el Honorable Tribunal de Primera Instancia al permitir que una agente investigadora hiciese un resumen de la prueba parcializado con conclusiones incorrectas, usando prueba de referencia inadmisible sin sustentar las fuentes de las conclusiones.

**Sexto Error:** Erró el Honorable Tribunal de Primera Instancia al continuamente no resolver las objeciones oportunas formuladas por la defensa permitiéndole a la fiscalía seguir preguntando y obteniendo respuestas mientras no le hacía caso a la Defensa.

El 27 de junio de 2024, la Sra. Pérez Oyola presentó una exposición narrativa de la prueba y, el 2 de agosto de 2024, el Ministerio Público presentó *Moción para Notificar Objeciones a la Exposición Narrativa de la Prueba Oral y Solicitud de Remedio.*

El 29 de agosto de 2024, la Sra. Pérez Oyola le notificó al Ministerio Público la exposición narrativa de la prueba oral de los testigos restantes y, el 13 de septiembre de 2024, el Ministerio Público presentó *Moción Informativa para Notificar Objeciones a la Exposición Narrativa de la Prueba Oral sobre los Testigos Restantes.*

El 27 de septiembre de 2024, la Sra. Pérez Oyola presentó la exposición narrativa de la prueba oral estipulada por las partes y, el 1 de octubre de 2024, su *Alegato en Apelación.* El 7 de noviembre de 2024, el Procurador General presentó *Alegato del Pueblo* en oposición al recurso.

El 20 de noviembre de 2024, emitimos una *Resolución* mediante la cual se solicitó a la Secretaría del TPI, en calidad de

préstamos, las piezas de evidencia correspondientes a este caso. El 25 de noviembre de 2024, la Secretaría cumplió con lo solicitado.

Contando con el beneficio de la comparecencia de las partes, la exposición narrativa de la prueba oral estipulada y la evidencia, procedemos a atender este recurso de apelación.

## II

### A.

En nuestro ordenamiento jurídico, para que una persona acusada sea encontrada culpable por la comisión de un delito, es necesario que el Ministerio Público presente prueba sobre cada uno de los elementos de este, así como de su conexión con el acusado y sobre la intención criminal de este último. *Pueblo v. Negrón Ramírez*, 2024 TSPR 41; *Pueblo v. Santiago et al.*, 176 DPR 133, 142 (2009); *Pueblo v. Acevedo Estrada*, 150 DPR 84, 99 (2000); *Pueblo en el interés del menor F.S.C.*, 128 DPR 931, 941 (1992).

De conformidad con lo dispuesto en la Constitución del Estado Libre Asociado de Puerto Rico, "en todos los procesos criminales, el acusado disfrutará del derecho [...] a gozar de la presunción de inocencia". Art. II, Sec. 11, LPRA Tomo 1, ed. 2023, pág. 359. La prueba suficiente para derrotar la presunción de inocencia que cobija a un acusado es aquella que permite hallar a un ciudadano culpable de la comisión de un delito al probar, más allá de duda razonable, todos los elementos del delito y la conexión del acusado con estos. *Pueblo v. Negrón Ramírez*, supra; *Pueblo v. Toro Martínez*, 200 DPR 834, 855-856 (2018); *Pueblo v. Colón Castillo*, 140 DPR 564, 581 (1996); *Pueblo en el interés del menor F.S.C.*, *supra*, pág. 941.

Esta determinación, de si se probó la culpabilidad del acusado más allá de duda razonable, es una que corresponde inicialmente al juzgador de hechos, quien vendrá llamado a evaluar y aquilatar la

evidencia presentada ante sí para determinar cuáles hechos han quedado probados o establecidos. Regla 110 de Evidencia, 32 LPRA Ap. VI, R. 110. Véase, *Pueblo v. Toro Martínez,* supra, pág. 858; *Pueblo v. Acevedo Estrada,* supra, pág. 98; *Pueblo v. Torres Rivera,* 137 DPR 630, 641 (1994). En casos criminales con derecho a juicio por Jurado, esta función le corresponde al Jurado, el cual está constitucionalmente encomendado a recibir la prueba, adjudicar los hechos en base a esta y aplicar el derecho según le instruya el tribunal. *Pueblo v. Santana Vélez,* 177 DPR 61, 65-66 (2009); *Pueblo v. Negrón Ayala,* 171 DPR 406, 414 (2007).

Si en virtud de la prueba presentada por el Ministerio Público, el juzgador de hechos estima que se han probado más allá de duda razonable todos los elementos del delito y la conexión de estos con el acusado, la obligación del juzgador es encontrar al acusado culpable del delito imputado. *Pueblo v. Negrón Ramírez,* supra. Ahora bien, el acusado que así fuere convicto tendrá el derecho de apelar su convicción ante un tribunal de superior jerarquía, el cual podrá pasar juicio sobre la determinación de culpabilidad realizada por el Tribunal de Primera Instancia. Regla 193 de Procedimiento Criminal, 34 LPRA Ap. II, R. 193. Esto debido a que la apreciación que hace un juzgador de la evidencia desfilada durante un juicio criminal y la eventual determinación de culpabilidad, son una cuestión mixta de hecho y de derecho que es revisable en apelación por un tribunal de mayor jerarquía. *Pueblo v. Negrón Ramírez,* supra; *Pueblo v. Cabán Torres,* 117 DPR 645, 653 (1986); *Pueblo v. Pagán Díaz,* 111 DPR 608, 621 (1981); *Pueblo v. Serrano Nieves,* 93 DPR 56, 60 (1966).

En nuestro ordenamiento jurídico impera una norma general de deferencia a la apreciación de la prueba y las determinaciones de hechos que realiza el foro juzgador, y solo reconoce contadas

excepciones en las que un tribunal apelativo podrá intervenir con estas y sustituir el criterio del foro primario por el suyo. *Pueblo v. Negrón Ramírez,* supra; *Pueblo v. Rivera Montalvo,* 205 DPR 352, 373 (2020); *Pueblo v. Santiago et al.,* 176 DPR 133, 144-148 (2009); *Pueblo v. Irizarry,* 156 DPR 780, 815 (2002).

Dicha deferencia emana del hecho de que los juzgadores de instancia se encuentran en una mejor posición para evaluar, aquilatar y adjudicar la prueba presentada ante ellos. *Pueblo v. Negrón Ramírez,* supra; *Pueblo v. Toro Martínez,* supra, págs. 857-858; *Pueblo v. García Colón I,* 182 DPR 129, 165 (2011); *Pueblo v. Bonilla Romero,* 120 DPR 92, 111 (1987). Esto cobra mayor vigencia cuando se trata de la prueba testifical desfilada en el juicio. Después de todo, son los juzgadores de hechos los que pueden oír y apreciar la forma de declarar de los testigos, así como su comportamiento. *Pueblo v. Toro Martínez,* supra, pág. 858; *Pueblo v. García Colón I,* supra, pág. 165.

Al respecto, el Tribunal Supremo ha señalado que, si bien la "suficiencia de la prueba" es algo que no debe confundirse con la "apreciación de la prueba" que realiza el juzgador de hechos, lo cierto es que muchas veces el planteamiento sobre insuficiencia de la prueba es uno que se reduce a la credibilidad que se le da a los testigos y a la apreciación que hace el juzgador de instancia sobre la prueba desfilada ante sí. *Pueblo v. Negrón Ramírez,* supra. Esto se debe a que el planteamiento de insuficiencia de prueba suele usarse para atacar, precisamente, la valorización que hace el juzgador de hechos de la prueba que se le presenta. *Íd.* A esos fines, el Tribunal Supremo ha expresado que, cuando los planteamientos sobre insuficiencia de prueba se reducen a uno de credibilidad de testigos (apreciación de la prueba), también seremos deferentes con los foros

de instancia. *Íd.*; *Pueblo v. Toro Martínez,* supra, pág. 857; *Pueblo v. Torres Rivera,* supra, págs. 640-641.

Por lo tanto, cuando en una apelación una parte cuestiona la validez de un fallo o veredicto en su contra alegando que el juzgador de hechos erró en su apreciación de la prueba testifical presentada en el juicio, es norma harta conocida que, de ordinario, un tribunal apelativo no intervendrá con dichas determinaciones, a no ser que el foro sentenciador haya incurrido en pasión, prejuicio, parcialidad o error manifiesto en la apreciación de la prueba. *Pueblo v. Hernández Doble,* 210 DPR 850, 864 (2022); *Pueblo v. Toro Martínez,* supra, pág. 858; *Pueblo v. Irizarry,* supra, pág. 789. Se ha definido el concepto de "pasión, prejuicio y parcialidad" como aquellas inclinaciones personales de tal intensidad que llevan a un juzgador a actuar movido por éstas y a adoptar posiciones, preferencias o rechazos con respecto a las partes o sus causas, sin admitir cuestionamientos sobre las mismas y sin importar la prueba que se haya presentado en el juicio. *Ortiz Ortiz v. Medtronic,* 209 DPR 759, 779 (2022); *Pueblo v. Rivera Montalvo,* supra, pág. 374; *Dávila Nieves v. Meléndez Marín,* 187 DPR 750, 782 (2013).

Por otro lado, en cuanto al significado de "error manifiesto", el Tribunal Supremo ha expresado que un juzgador incurre en semejante error y en una determinación claramente errónea si, aun habiendo alguna prueba que sostenga las determinaciones de hechos del tribunal, el foro revisor razona que se cometió un error, "como cuando las conclusiones están en conflicto con el balance más racional, justiciero y jurídico de la totalidad de la evidencia recibida". *Dávila Nieves v. Meléndez Marín,* supra, pág. 772. Esto, luego del correspondiente análisis de la totalidad de la evidencia presentada en corte. *Íd.*

Además, se reconoce que un tribunal apelativo podrá revocar la determinación de culpabilidad realizada por un juzgador de hechos si la prueba no concuerda con la realidad fáctica, es increíble o es imposible; y que también podrá intervenir con las determinaciones de hechos y apreciación de la prueba que realice el juzgador de primera instancia si se demuestra que este incurrió en un abuso de discreción al apreciar y adjudicar la prueba presentada ante sí. *Pueblo v. Negrón Ramírez*, supra.

**B.**

El delito de homicidio negligente se encuentra tipificado en el Artículo 96 del Código Penal, 33 LPRA sec. 5145. En lo pertinente al caso ante nuestra consideración, este Artículo dispone lo siguiente:

> "Toda persona que ocasione la muerte a otra por negligencia incurrirá en delito menos grave, pero se le impondrá pena de reclusión por un término fijo de tres (3) años.
>
> [...]". *Íd.*

En cuanto a la negligencia como elemento subjetivo del delito, el Artículo 22 (4) del Código Penal, 33 LPRA sec. 5035, dispone lo siguiente:

> "Una persona actúa negligentemente **cuando debió haber sabido que su conducta genera un riesgo sustancial e injustificado de que se produzca el resultado lesivo o la circunstancia prohibida por ley.** El riesgo debe ser de tal grado que considerando la naturaleza y el propósito de la conducta y las circunstancias conocidas por el actor, la acción u omisión de la persona constituye una desviación crasa del estándar de cuidado que observaría una persona razonable en la posición del actor." (énfasis suplido).

El delito de homicidio negligente se prueba mediante la presentación de evidencia que demuestre más allá de duda razonable que el acusado cometió el acto negligente que resultó en la muerte de otra persona.

**C.**

En cuanto a la admisión o exclusión errónea de evidencia, la Regla 104(a) de Evidencia, 32 LPRA Ap. VI, R. 104(a), en lo pertinente, dispone que "[l]a parte perjudicada por la admisión errónea de evidencia debe presentar una objeción oportuna, específica y correcta [...]." *Pueblo v. Santiago Irizarry*, 198 DPR 35, 44 (2017). En el caso de exclusión errónea de prueba, la Regla dispone, además, que:

> "[L]a parte perjudicada deberá invocar el fundamento específico para la admisibilidad de la evidencia ofrecida y hacer una oferta de prueba de forma que surja claramente cuál es la evidencia que ha sido excluida y la naturaleza, propósito y pertinencia para la cual se ofrece. No será necesario invocar tal fundamento específico ni hacer la oferta de prueba cuando resultan evidentes del contexto del ofrecimiento.

> El tribunal permitirá la oferta de prueba y determinará si debe hacerse mediante un resumen de la evidencia ofrecida o el interrogatorio correspondiente. El tribunal podrá añadir cualquier manifestación que demuestre el carácter de la evidencia, la forma en que fue ofrecida, la objeción a su admisión y la resolución sobre la exclusión." Regla 104(b) de Evidencia, *supra*.

De esta forma, la Regla 104 de Evidencia, *supra*, permite que la parte perjudicada pueda apelar, en su momento, la determinación del foro de instancia. Ahora bien, para que el foro apelativo pueda dejar sin efecto dicha determinación, la parte perjudicada deberá cumplir con lo dispuesto en la Regla 105 de Evidencia, 32 LPRA Ap. VI, R. 105. Esta Regla dispone que, como regla general, no se dejará sin efecto una determinación de admisión o exclusión errónea de evidencia ni se revocará por ello sentencia o decisión alguna a menos que:

> "(1) La parte perjudicada con la admisión o exclusión de evidencia hubiere satisfecho los requisitos de objeción, fundamento u oferta de prueba establecidos en la Regla 104, y

> (2) el tribunal que considera el señalamiento estime que la evidencia admitida o excluida fue un factor decisivo o sustancial en la sentencia emitida o decisión cuya revocación se solicita." Regla 105(a) de Evidencia, *supra*.

La Regla 105 (a) (2) de Evidencia, *supra,* es crucial para determinar si un error en el manejo de la evidencia puede justificar una revocación.

En relación con este requisito, la doctrina de error no perjudicial (*"harmless error"*) establece que los tribunales apelativos no revocarán una sentencia por admisión o exclusión errónea de evidencia, a menos que el error haya sido "un factor decisivo o sustancial en la sentencia emitida". *Íd.*; *Pueblo v. Santiago Irizarry,* supra, pág. 45. Véase, además, *Pueblo v. Santos Santos,* 185 DPR 709, 728 (2012).

Por lo tanto, si el tribunal de apelaciones determina que la admisión o exclusión errónea de evidencia no alteró el desenlace del caso, el dictamen original deberá ser confirmado a pesar del error. *Pueblo v. Santiago Irizarry,* supra, pág. 45.

### III.

En el **primer** y **sexto** señalamiento de error del recurso de *Apelación,* la apelante señala que el Tribunal de Primera Instancia cometió errores de parcialidad y prejuicio, afectando negativamente su derecho a un juicio justo e imparcial. Específicamente, alega que el TPI mostró animosidad hacia ella y su abogado frente al Jurado, lo que comprometió la integridad del proceso judicial. Además, alega que el TPI no resolvió las objeciones levantadas de manera oportuna por la Defensa, permitiendo que el Ministerio Público continuara con su interrogatorio mientras se ignoraban los planteamientos de la Defensa. La Sra. Pérez Oyola, por conducto de su representación legal, argumenta que esta conducta influyó en el resultado del juicio, ya que permitió que el Ministerio Publico tuviera ventajas injustificadas sobre la Defensa, afectando el derecho a un juicio justo.

Dado que estos señalamientos de error están relacionados entre sí, los abordaremos de manera conjunta. Evaluada la exposición narrativa de la prueba oral, no encontramos que la Defensa haya sido tratada de manera inequitativa por la Juez que presidió los procedimientos del caso. No se han demostrado actos de parcialidad, prejuicio o animosidad que afectaran el derecho a un juicio justo e imparcial. Las objeciones y planteamiento de la Defensa fueron debidamente atendidos conforme al procedimiento establecido, sin que se observe ventaja injustificada para el Ministerio Público ni prejuicio hacia la Defensa. Por lo tanto, no procede intervenir con la determinación del TPI en este aspecto.

La apelante señala varios errores adicionales cometidos por el Tribunal de Primera Instancia durante el juicio. En el **segundo** error, alega que se permitió a testigos del Departamento de la Familia declarar sobre expresiones realizadas por la Sra. Pérez Oyola cuando ya era sospechosa de la muerte de la víctima. En el **tercer** error, cuestiona que no se le permitiera impugnar un informe de autopsia que fue alterado años después a petición de los fiscales del caso, limitando el contrainterrogatorio a la patóloga. Asimismo, en el **cuarto** error, señala que no se permitió contrainterrogar a un perito psiquiatra contratado por el Estado, mientras la jueza rehabilitaba su testimonio frente al jurado. Por último, en el **quinto** error, argumenta que se permitió a una agente investigadora presentar un resumen de la prueba parcializado y basado en conclusiones incorrectas, utilizando referencias inadmisibles sin sustentar las fuentes de sus conclusiones.

En este caso, aun aceptando que los errores señalados por la apelante ocurrieron, la aplicación de la doctrina del error no perjudicial permite concluir que estos no tuvieron un impacto sustancial en el resultado del juicio ni en la sentencia emitida. La

evidencia presentada demostró que la apelante, en su calidad de Directora del Hogar La Nueva Familia San Judas Tadeo, retiró abruptamente los medicamentos recetados para el tratamiento de salud mental de la joven Jaydie Álvarez, días antes de su muerte, sin contar con una orden médica. Esta conducta, realizada pese a su experiencia como enfermera, representó una desviación crasa del estándar de cuidado que observaría una persona razonable en su posición, lo que resultó directamente en la muerte de la joven.[2] El jurado, tras evaluar la prueba forense y los testimonios presentados, determinó que la apelante incurrió en el delito de homicidio negligente. Aunque la apelante señala varios errores relacionados con la admisión de evidencia, limitaciones al contrainterrogatorio, testimonios y alegaciones de parcialidad judicial, estos no alteraron el resultado del juicio, ya que la determinación del jurado se basó en evidencia sólida e independiente.

La Sra. Edda Rodríguez Morales, patóloga forense, ofreció un informe y testimonio detallado sobre los hallazgos en la evaluación de la víctima y las causas de la muerte.[3] Explicó que la causa final del fallecimiento de la joven Jaydie Álvarez fue un edema pulmonar agudo que resultó de un cuadro de *"excited delirium"*, el cual se desencadenó por la súbita e inadecuada retirada de los medicamentos prescritos para tratar su condición de salud mental. Este estado generó un colapso fisiológico que derivó en una arritmia cardíaca severa, acumulación de líquido en los pulmones y, finalmente, la muerte. La patóloga subrayó que esta situación pudo haberse evitado si el retiro de los medicamentos se hubiera realizado de forma supervisada y gradual, siguiendo protocolos médicos

---

[2] Véase, *Exposición Narrativa de la Prueba Oral* presentada el 27 de septiembre de 2023, págs. 159-167.

[3] Véase, *Exposición Narrativa de la Prueba Oral* presentada el 27 de septiembre de 2023, págs. 146-158.

adecuados. También explicó que las abrasiones y lesiones encontradas en el cuerpo de la víctima eran consistentes con un intento de restricción física durante episodios de agitación, típicos en cuadros como el *"excited delirium"*.

Además, el testimonio de la Sra. Lisa Quiñones Castro, Secretaria de la Junta Examinadora de Enfermería de Puerto Rico, presentado como parte del Ministerio Público, evidenció que la apelante no estaba autorizada para ejercer la enfermería en el año 2018, cuando ocurrieron los hechos de este caso, ya que su licencia había vencido el 30 de septiembre de 1989.[4] Este dato, refuerza la conclusión de que la apelante actuó sin la debida autorización profesional, agravando la negligencia en sus acciones.

El segundo error, relacionado con la admisión de testimonios del Departamento de la Familia, no tuvo impacto sustancial en la decisión final, ya que la evidencia médica y forense independiente corroboró los hechos. Respecto al tercer error, sobre la limitación al contrainterrogatorio de la patóloga respecto al informe de autopsia enmendado, este cambio en el informe solo añadió información derivada de nuevos hallazgos que no alteraron la conclusión general. Según la exposición narrativa de la prueba oral, la patóloga declaró que el informe de autopsia fue enmendado posteriormente para incluir el efecto directo de la retirada de los medicamentos como causa de la muerte, basado en las evidencias recopiladas durante el proceso investigativo.

En cuanto al cuarto error, relacionado con el contrainterrogatorio del perito psiquiatra, no se demostró que esto afectara la imparcialidad o que tuviera un impacto decisivo sobre el Jurado. Finalmente, el quinto error, sobre el resumen parcializado

---

[4] Véase, *Exposición Narrativa de la Prueba Oral* presentada el 27 de septiembre de 2023, págs. 89-94.

de una agente investigadora, tampoco afectó la decisión, dado que el Jurado tuvo acceso a evidencia independiente que confirmó la negligencia de la apelante.

Por lo tanto, no se identifican circunstancias que ameriten revocar o modificar la sentencia, por lo que resolvemos confirmar la determinación del Tribunal de Primera Instancia.

## IV.

Por los fundamentos que expondremos, resolvemos confirmar la sentencia apelada.

Lo acordó el Tribunal y lo certifica la Secretaría del Tribunal de Apelaciones.

Lcda. Lilia M. Oquendo Solís
Secretaria del Tribunal de Apelaciones